UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WINSTON SANDERS, * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> BRIAN ARSENEAULT and MATTHEW * <br> BORGES, in their individual and official * <br> capacities, * <br> * <br> Defendants. * | Civil Action No. 19-cv-12284-IT |

MEMORANDUM & ORDER

March 16, 2021

TALWANI, D.J.

This case involves the alleged mistreatment of Plaintiff Winston Sanders by two employees of the Massachusetts Department of Correction while he was incarcerated at Massachusetts Correctional Institution-Cedar Junction ("MCI-Cedar Junction").[1] Sanders alleges that correction officers Brian Arsenault and Matthew Borges physically assaulted him and then fabricated disciplinary reports against him.

Pending before the court are Arsenault and Borges' Motion to Dismiss [#25] and Sanders' Motion for Leave to Amend the Complaint [#35]. For the following reasons, the Motion for Leave to Amend the Complaint [#35] is GRANTED IN PART and DENIED IN PART, and the Motion to Dismiss [#25] is DENIED as moot.

---

[1] The Complaint [#1] also named Commissioner of Correction, Carol Mici, and MCI-Cedar Junction Superintendent, Douglas DeMoura as defendants. The court dismissed the claims against Commissioner Mici and Superintendent DeMoura without prejudice. Elec. Order [#5].

I.      **Factual Background**

The facts, as alleged in the Complaint [#1], are as follows. At all times relevant to this action, Sanders was incarcerated at MCI-Cedar Junction. Compl. ¶ 6 [#1]. On June 27, 2018, Arsenault and Borges removed Sanders from his housing unit and subjected him to a strip search. Id. at ¶¶ 12-15. The Complaint [#1] alleges that while Sanders was naked, Borges ordered Sanders to put his hands behind his back, but before Sanders had a chance to comply, Arsenault grabbed Sanders and slammed him to the ground. Id. at ¶ 17. According to the Complaint [#1], Arsenault then grabbed Sanders by the throat and stuck his fingers down Sanders' throat, causing Sanders to lose consciousness and fear for his life. Id. at ¶¶ 21, 23. Sanders contends that when he regained consciousness, Borges and unnamed correction officers were on top of him and placing him in restraints. Id. at ¶ 22. Sanders reports that he was then taken to the Health Services Unit for ten days, and, while there, was strip searched every day, required to defecate into a plastic bag, and put through a body scanner. Id. at ¶¶ 24-25.

The Complaint [#1] further alleges that, following this incident, Arsenault and Borges issued Sanders multiple disciplinary reports, which falsely claimed that he had possessed narcotics and confessed to such possession. Id. at ¶¶ 26-29. Sanders claims that he was then placed in segregated confinement for seven months before being afforded a disciplinary hearing on January 29, 2019. Id. at ¶ 31. Then, according to the Complaint [#1], on February 4, 2019, Arsenault and other unnamed correction officers again assaulted Sanders, spraying him excessively with a chemical agent and attempting to break his fingers. Id. at ¶ 34.

The Proposed Amended Complaint [#35-2] includes these same allegations but also asserts that, because of the correction officers' conduct, Sanders suffered an array of physical symptoms, including "headaches, dizziness, burning and irritation of the flesh and eyes, back

pains, soreness of the throat and fingers, loss of consciousness, impairment of vision." Prop. Am. Compl. ¶ 36 [#35-2].

## II.     Procedural History

On November 7, 2019, Sanders commenced this action under 42 U.S.C. § 1983, alleging that Arsenault and Borges violated his Eight and Fourteenth Amendment rights. Compl. [#1]. He also brought claims under state law for assault and battery and intentional infliction of emotional distress. Id. On August 7, 2020, Arsenault and Borges filed their Motion to Dismiss for Failure to State a Claim [#25]. On September 18, 2020, the court granted Sanders' Motion for Enlargement of Time [#30], see Elec. Order [#31], and on November 2, 2020, Sanders filed his Opposition [#30] and a Motion Requesting a Court-Appointed Lawyer [#32]. The court denied the request for counsel on November 30, 2020. See Order [#34].

On December 21, 2020, Sanders filed a Motion for Leave to Amend the Complaint [#35] seeking to add additional facts regarding his purported injuries, as well as three additional claims: failure to protect, conspiracy, and a civil RICO violation. Prop. Am. Compl. ¶¶ 41-43 [#35-1]. Arsenault and Borges have opposed amendment as made in bad faith and on grounds of futility as to the new claims and for the reasons set forth in support of their Motion to Dismiss [#25]. Defs' Opp. [#36].

## III.    Standard of Review

### A.     *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiffs' favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

In general, a complaint filed *pro se* is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that *pro se* plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (citation omitted).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original). If other matters outside the pleadings are presented to the court, the court may exclude such matters or may treat the motion as one for summary judgment, with all parties given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

B.      *Leave to Amend*

A party may amend its pleadings once as a matter of course within twenty-one days of serving it or within twenty-one days after service of a responsive pleading or Rule 12 motion. Fed. R. Civ. P. 15(a). In all other cases, a party may amend its pleading only with the consent of the other party or leave of the court. Id.

4

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely granted "when justice so requires." Nevertheless, a motion for leave to amend may be denied in cases of (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (4) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). Bad faith is a subjective inquiry that requires proof that the moving party acted with an improper motive, such as an intent to deceive, harass, delay, or disrupt. See Black's Law Dictionary 139 (6th ed. 1990) (bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will"). As to futility, when leave to amend is sought before discovery is complete, and neither party has moved for summary judgment, futility is gauged by the same standard as legal sufficiency under Rule 12(b)(6). See Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

**IV.  Discussion**

Given the substantial similarities between the original and amended complaints, and in the interest of judicial economy, the court addresses the pending motions in the following order. First, the court considers the correction officers' arguments concerning Sanders' alleged bad faith in moving for leave to amend. Finding no bad faith, the court considers whether the causes of action in the Complaint [#1] and the additional causes of action in the Proposed Amended Complaint [#35-2] state claims upon which relief may be granted, beginning with the correction officers' arguments that all the claims are barred by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, and its Massachusetts counterpart, G. L. c 127, §§ 38E.

A.  *Bad Faith*

Arsenault and Borges argue that Sanders' Motion for Leave to Amend the Complaint [#35] should be denied because Sanders is acting in bad faith. Defs' Opp. 3 [#36]. Specifically,

5

they claim that Sanders acknowledges that, aided by "another inmate, who is clearly not an attorney," he rushed his Complaint [#1] and filed it knowing that it was "insufficient." Id. They further argue that Sanders "chose not to" file an amended complaint after the court dismissed his claims against Commissioner Mici and Superintendent DeMoura or within twenty-one days of the Motion to Dismiss [#25] and that this points to bad faith. Id.

Given the liberal policy of favoring amendment to pleadings so as to decide cases based on their merits, see Fed. R. Civ. P. 15(a), the party opposing amendment bears the burden of demonstrating bad faith, see, e.g., Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 n.2 (5th Cir. 1981). The court therefore draws all reasonable inferences in favor of permitting amendment and imputes benign motives to the moving party where plausible.

The court finds that Arsenault and Borges have not shown that Sanders was acting in bad faith. First, their criticism of Sanders for obtaining assistance from another inmate in preparing Sanders' *pro se* Complaint [#1] is unwarranted. As the Supreme Court has noted, many inmates lack the ability or knowledge to bring legal claims, and "if such prisoners cannot have the assistance of a 'jailhouse lawyer,' their possible valid constitutional claims will never be heard in any court." Johnson v. Avery, 393 U.S. 483, 487 (1969). That Sanders' Complaint [#1] may have been "rushed" so that he could take advantage of such assistance is not evidence of bad faith.

Nor is Sanders' failure to file an amended complaint after the court dismissed his claims against Commissioner Mici and Superintendent DeMoura or within twenty-one days of when the Motion to Dismiss [#25] was filed evidence of bad faith. The correction officers have not provided the court with any evidence that Sanders knew that he had the option of filing within

6

twenty-one days and decided not to do so and, drawing all possible inferences in Sanders' favor, the court assumes that he was unfamiliar with the deadlines of federal civil litigation.

  B.  *Exhaustion of Administrative Remedies*

The correction officers move to dismiss the Complaint [#1] on the ground that Sanders failed to exhaust his administrative remedies as required by the PLRA. In relevant part, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Similarly, Massachusetts law states that "An inmate shall not file any claim that may be the subject of a grievance under [G. L. c. 127] section 38E unless the inmate has exhausted the administrate remedy established pursuant to said section 38E." G. L. c. 127, § 38F.

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). "This exhaustion requirement applies to allegations of physical violence by prison guards." Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002)). The purpose of the requirement is "to reduce the quantity and improve the quality of prisoner suits" and to give prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25.

However, failure to exhaust administrative remedies under the PLRA is not jurisdictional; it is an affirmative defense that a defendant must plead and prove. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints");

see also Cruz Berrios, 630 F.3d at 11. So, on a motion to dismiss, a plaintiff's alleged failure to exhaust administrative remedies cannot be grounds for dismissal unless the properly considered facts "suffice to establish" this failure to exhaust "with certitude." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004); see also Jones, 549 U.S. at 212 (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3rd Cir. 2001)) ("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face").

That is not the case here. The correction officers argue that under 103 CMR 491.08(4), an inmate grievance must be filed within ten working days of the incident at issue, while here, Grievance No. 103737, which they proffer as an exhibit to their Memorandum, see Ex. A [#26-1], is dated nine months after the June 27, 2018 incident and is therefore untimely. Defs' Mem. 9-10 [#26]. But there is no reference to Grievance No. 103737 in the Complaint [#1], and the court finds no grounds on a motion to dismiss to ignore Sanders' allegation that he has exhausted all available administrative remedies, see Complaint 2 [#1], and instead accept the additional material proffered by Arsenault and Borges. Moreover, in Grievance No. 103737, Sanders states that "[t]his is the third grievance I am submitting on this matter dating all the way back to 7/5/18," Ex. A [#26-1], and in the absence of any rebuttal of his claim regarding prior grievances, Grievance No. 103737 offers no support for the failure to exhaust defense. Accordingly, it cannot be said "with certitude" that Sanders failed to exhaust his administrative remedies at this point in the proceedings. Rodi, 389 F.3d at 12.

    C.    *Physical Injury Requirement*

The correction officers also argue that Sanders' claims must be dismissed because he fails to plead a physical injury. Defs' Mem. 6 [#26]. The PLRA bars an inmate's action for compensatory damages based on mental or emotional injuries suffered in custody without a showing of "physical injury." 42 U.S.C. § 1997e(e). However, the Complaint [#1] alleges that

Sanders was thrown to the ground and choked to the point of unconsciousness. The Proposed Amended Complaint [#35-2] claims further physical symptoms, including "headaches, dizziness, burning and irritation of the flesh and eyes, back pains, soreness of the throat and fingers, loss of consciousness, impairment of vision." This suffices to plead "physical injury" within the meaning of the statute.[2]

    D.    *Section 1983 Claims*

Sanders asserts four claims under section 1983 against Arsenault and Borges in their individual and official capacities. "[N]either a state agency nor a state official acting within his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). Consequently, the court considers Sanders' section 1983 claims against the correction officers only in their individual capacities.

Section 1983 creates a civil cause of action against individuals acting under color of state law who violate a plaintiff's federally protected rights. 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). Here, there is no dispute that the correction officers were, at all times relevant, acting under color of state law. At issue is only whether they deprived Sanders of a legally cognizable right.

---

[2] The First Circuit has not determined whether the PLRA requires a showing of more than a *de minimis* injury. However, even assuming that the PLRA requires more than a *de minimis* injury, Sanders has alleged non-*de minimis* injuries to his back and head, including headaches, loss of consciousness, and impaired vision and hearing. Prop. Am. Compl. ¶ 36 [#35-2].

1.  Cruel and Unusual Punishment

Sanders contends that Arsenault and Borges violated the Eighth Amendment's prohibition against cruel and unusual punishment by physically assaulting him without justification. The Eighth Amendment of the United States Constitution, incorporated against the states through the Fourteenth Amendment, see Robinson v. California, 370 U.S. 660 (1962), provides in part that "nor [shall] cruel and unusual punishments [be] inflicted." U.S. Const. amend. VIII. That includes the use of excessive and unjustified physical force by prison officials against inmates. See Whitley v. Albers, 475 U.S. 312, 327 (1986). And in that context, the "unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. at 319 (internal quotations omitted). In contrast, force applied "in a good-faith effort to maintain or restore discipline" does not constitute a violation. Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

The correction officers assert that the force was used in a "good-faith effort to maintain or restore discipline" and that Sanders' inclusion of the disciplinary reports that arose from the incident provides "clear evidence of the need for the use of force applied." Defs' Mem. 11-12 [#26]. But the allegations in Sanders' Complaint [#1]—which must be credited as true for purposes of the motion to dismiss—are that the physical assault against him on June 27, 2018, was unprovoked and that the disciplinary reports, on which the correction officers rely as justification for their conduct, were fabricated for the very purpose of such justification. The correction officers also argue that Sanders' injuries were *de minimis* and therefore must be dismissed, but Sanders alleges that, among other things, he was choked to the point of unconsciousness, causing him to fear for his life. Compl. ¶¶ 21-23. The court concludes that

Sanders has alleged sufficient facts to support his claim for a violation of the Eighth Amendment for use of excessive force.

### 2. Due Process and Equal Protection

Sanders also alleges violations of his Fourteenth Amendment rights to due process and equal protection. To allege a procedural due process violation, a plaintiff must demonstrate (1) that he has been deprived of a protected interest and (2) that the deprivation was accomplished without due process of law. Perez–Acevedo v. Rivero–Cubano, 520 F.3d 26, 30 (1st Cir. 2008). A protected liberty interest may arise either from the Due Process Clause itself or from state law. Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989). In the prison context, a liberty interest is defined as a change that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Whether such hardship exists is determined by examining both the degree and the duration of restrictive confinement. Id. at 486.

Although the Complaint [#1] does not specifically identify the basis for Sanders' due process claim, Sanders alleges that he was placed in segregated confinement for seven months before being afforded a disciplinary hearing. Compl. ¶ 31. In Sandin v. Conner, cited by the correction officers, the Supreme Court held that prisoners have no liberty interest in being taken out of the general prison population and placed temporarily in administrative segregation because the nature of the conditions in solitary confinement does not present "a dramatic departure from the basic conditions" of the inmate's sentence. 515 U.S. at 485. In that case, though, the inmate was placed in segregation for thirty days following a disciplinary hearing at which he was found guilty of misconduct. Id. at 475-76.

The Court in Sandin also suggested that if a transfer were to impose "atypical and significant hardship," a liberty interest might be found. Id. at 484. No definitive outer bounds for that standard have been defined, but the Massachusetts Supreme Judicial Court has held that this liberty interest attaches after ninety days of segregated confinement without a hearing. See LaChance v. Commissioner of Correction, 463 Mass. 767, 776-77 (2012). Furthermore, an inmate confined to administrative segregation "is entitled, as a matter of due process, to notice of the basis on which he is so detained; a hearing at which he may contest the asserted rationale for his confinement; and a posthearing written notice explaining the reviewing authority's classification decision." Id. Where Sanders alleges that he was held in segregation for seven months prior to his disciplinary hearing, he has stated a claim for violation of his right to due process.

Sanders has not, however, stated a claim for equal protection. "An equal protection claim requires 'proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995)). Sanders' Complaint [#1] states that he is African-American; however, he has not alleged disparate treatment on the basis of his race.

3. Failure to Protect

Under section 1983, "[a]n officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers." Wilson v. Town of Mendon, 294

12

F.3d 1, 6 (1st Cir. 2002); see also Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance"). To prevail on a section 1983 claim for failure to intervene, a plaintiff must show that "a non-participating defendant . . . 1) was present when excessive force was used, 2) observed the use of excessive force, 3) was in a position to realistically prevent that force and 4) had sufficient time to do so." Walker v. Jackson, 56 F. Supp. 3d 89, 96 (D. Mass. 2014) (citing Davis, 264 F.3d at 102).

In the Proposed Amended Complaint [#35-2], Sanders alleges that, on January 29, 2019, Arsenault slammed him to the ground and then proceeded to choke him while Borges was on the scene. However, Sanders does not allege any facts that indicate that Borges was in a position to prevent Arsenault's actions or had sufficient time to intervene. Additionally, because Borges allegedly went on to participate in the physical assault, he was not a "non-participating defendant" but rather a participating defendant against whom Sanders alleges excessive use of force. The facts as alleged are therefore insufficient to state a plausible claim for relief based on a failure to intervene theory of liability, and the claim is futile.

    4.    Conspiracy

A civil rights conspiracy under section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a

conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citations omitted).

As discussed above, Sanders has adequately pleaded violations of his Eighth and Fourteenth Amendment rights. In addition, he alleges that Arsenault and Borges conspired to fabricate disciplinary reports in which they falsely claimed that Sanders had possessed narcotics and confessed to that possession. Prop. Am. Compl. ¶ 28 [#35-2]. He has therefore stated a claim upon which relief can be granted.

     5.     Qualified Immunity

The correction officers argue that, even if Sanders' constitutional rights were violated, they are entitled to qualified immunity. Defs' Mem. 16-17 [#26]. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts evaluate claims for qualified immunity under a two-part test: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). Here, the court has determined that Sanders has stated claims for violation of his Eighth and Fourteenth Amendment rights, so it turns to the second prong.

As to the alleged Eighth Amendment violation, there is no question that use of unjustified and excessive force against inmates is absolutely prohibited. See, e.g., Hudson, 503 U.S at 9-10; Whitley, 475 U.S. at 327. Crediting Sanders' version of the facts, as the court must on a motion to dismiss, reasonable officers would have known that throwing a prisoner to the ground and

14

choking him for no reason while he shouted that they were hurting him amounts to an unjustified use of force in violation of the Eighth Amendment. Similarly, following the Massachusetts Supreme Judicial Court's ruling in LaChance in 2012, a reasonable officer in 2018 would have known that an inmate may not be placed in administrative segregation for more than ninety days without a hearing. 463 Mass. at 776-77; see also Perry v. Spencer, 751 F.App'x 7, 11 (1st Cir. 2018) (holding that defendants were entitled to qualified immunity where plaintiff was held in solitary confinement for 600 days because plaintiff was released into the general population shortly after LaChance was decided). And, finally, "a reasonable correctional officer would have realized that fabricating false charges against [an inmate] with the knowledge that the fabrication would lead to immediate segregation was constitutionally impermissible." Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005); see also Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004) (holding that it is "self-evident" that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit"). The correction officers are therefore not entitled to qualified immunity on a motion to dismiss.

    E.    *State Law Claims*

In addition to his section 1983 claim, Sanders' Complaint [#1] brings claims under state law for assault and battery and intentional infliction of emotional distress

    1.    Assault and Battery

To state a claim for assault and battery, a plaintiff must plead sufficient facts to demonstrate that a defendant committed an "intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." Montel v. City of Springfield, 386 F.Supp.3d 67, 79 (D. Mass. 2019) (quoting Commonwealth v. McCan, 277 Mass. 199, 203 (1931)). Under Massachusetts law, a court's "determination of the reasonableness of the force used" as to

constitutional claims controls the "determination of reasonableness of force used under the common law assault and battery claims." Raiche v. Pietroski, 623 F.3d 30, 40-41 (1st Cir. 2010); see also LaFrenier v. Kinirey, 478 F.Supp. 2d 126, 143 (D. Mass. 2007) ("Because the Court has already determined that the force used by Defendants was objectively reasonable for excessive force purposes, it concludes that plaintiff's assault and battery charge cannot be sustained"); Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007) (finding reasonableness analysis on section 1983 claim dispositive for state law civil rights claim).

As with the Eighth Amendment claim, the correction officers argue that the disciplinary report attached to Sanders' Complaint [#1] makes clear that their use of force was justified, but as before, the court must take the allegation that the disciplinary reports were fabricated as true for the purpose of a motion to dismiss. Because Sanders has alleged that Arsenault and Borges slammed him to the ground, grabbed his throat, and choked him to the point of unconsciousness, and that, on a later occasion, Arsenault sprayed Sanders with a chemical agent and attempted to break his fingers, all without justification or provocation, he has stated a claim under state law. Compl. ¶¶ 18, 21-23, 34 [#1].

        2.        Intentional Infliction of Emotional Distress

Sanders' final claim alleges that "the action and/or omissions of the defendants . . . caused [him] emotional distress and mental anguish." Compl. ¶ 40 [#1]. The court construes this as a claim for intentional infliction of emotional distress. To plead intentional infliction of emotional distress, a plaintiff must who that (1) the defendant intended to inflict emotional distress or should have known it was likely to result; (2) the defendant's conduct was extreme and outrageous; (3) the actions of the defendant caused the emotional distress; and (4) the

emotional distress sustained by the plaintiff was severe. See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)).

Here, Sanders's alleges that Arsenault and Borges physically attacked him without justification or provocation; that they choked him to the point of unconsciousness; that they subsequently filed false disciplinary reports against him, which caused him to be placed in segregation for seven months without a hearing; and that, on a different occasion, Arsenault sprayed him with a chemical agent and attempted to break his fingers. Compl. ¶¶ 18, 21-23, 26-29, 34 [#1]. Sanders also points to evidence of "severe" emotional distress, claiming that he feared for his life on both occasions when he was physically assaulted by the correction officers. Id. at ¶¶ 23, 35. He has therefore stated a claim on which relief may be granted.

F.   *Civil RICO Act Claim*

Sanders' Proposed Amended Complaint [#35-2] also seeks to add a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1962(c). A successful civil RICO action requires proof of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). A "pattern of racketeering activity" consists of at least two related acts of racketeering activity committed by defendants over an extended period of time. See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 731–32 (1st Cir. 1996). To demonstrate relatedness, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics, and are not isolated events." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991) (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 238 (1989)). Predicate acts must be plead with particularity, Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997), and

17

must be shown to have caused an injury to "business or property," Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995).

Sanders has not pleaded any facts suggesting that Arsenault and Borges engaged in racketeering. The claim is accordingly futile.

### V. Conclusion

For the foregoing reasons, Sanders' Motion to Amend the Complaint [#35] is GRANTED except as to the proposed claims for failure to protect under section 1983 and violation of the RICO Act. Arsenault and Borges' Motion to Dismiss [#25] is DENIED as moot.

IT IS SO ORDERED.

March 16, 2021  /s/ Indira Talwani
United States District Judge